1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11   ANTONIO DIAZ,                    CASE NO. CV 18-1888 SS

12              Plaintiff,

13        v.
                                      **MEMORANDUM DECISION AND ORDER**
14   NANCY A. BERRYHILL, Acting
     Commissioner of Social
15   Security,

16              Defendant.

17

18                               **I.**

19                          **INTRODUCTION**

20

21        Antonio Diaz ("Plaintiff") brings this action seeking to

22   overturn the decision of the Acting Commissioner of Social Security

23   (the "Commissioner" or "Agency") denying his applications for

24   Disability Income Benefits ("DIB") and Supplemental Security Income

25   ("SSI").  The parties consented pursuant to 28 U.S.C. § 636(c) to

26   the jurisdiction of the undersigned United States Magistrate Judge.

27   (Dkt. Nos. 11-13).  For the reasons stated below, the decision of

28

the Commissioner is REVERSED, and this case is REMANDED for further administrative proceedings consistent with this decision.

## II.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an Administrative Law Judge ("ALJ") conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by

3

reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## III.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled prior to April 16, 2015, but became disabled on that date and has continued to be disabled through the date of the decision. (AR 18-19). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 20, 2008, the alleged onset date. (AR 20). At step two, the ALJ found that Plaintiff's morbid obesity, diabetes mellitus, lymphedema, and post arthrodesis of the right tibiotalar and talocalcaneal joints with fracture of the anterior calcaneal screw are severe impairments.[1] (AR 20). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically

---

[1] The ALJ also found that Plaintiff's medically determinable impairments of diabetic retinopathy, hyperlipidemia, hyperkalemia, and age-related nuclear cataract do not cause significant functional limitations and are therefore nonsevere. (AR 21).

4

equal the severity of any of the listings enumerated in the regulations. (AR 21).

The ALJ then assessed Plaintiff's RFC and concluded that prior to April 16, 2015, he could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:[2]

> [Plaintiff could] stand and/or walk (with normal breaks) for a total of two hours in an eight-hour workday, sit (with normal breaks) for a total of six hours in an eight-hour workday, could never walk on uneven terrain or work at unprotected heights, could occasionally push and/or pull with the right lower extremity, could occasionally climb ramps and stairs, could never climb ladders, ropes, or scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, and needed to use a cane to ambulate when walking in excess of 100 feet.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

(AR 21-22). Beginning on April 16, 2015, Plaintiff has the capacity to perform light work, as defined above, except:

> [Plaintiff can] stand and/or walk (with normal breaks) for a total of two hours in an eight-hour workday, sit (with normal breaks) for a total of six hours in an eight-hour workday, can never walk on uneven terrain or work at unprotected heights, can occasionally push and/or pull with the right lower extremity, can occasionally climb ramps and stairs, can never climb ladders, ropes, or scaffolds, can occasionally balance, stoop, kneel, crouch, and crawl, needs to use a cane to ambulate when walking in excess of 100 feet, and has to alternate between sitting 45 minutes to an hour and laying down and elevating his legs above heart level for two hours throughout the workday.

(AR 24).

At step four, the ALJ found that since November 20, 2008, the alleged onset date, Plaintiff has been unable to perform any past relevant work. (AR 25). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that prior to April 16, 2015, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including addresser clerk, document preparer, and telephone info clerk. (AR 25-26). However, beginning on April 16, 2015, based on Plaintiff's RFC, age, education, work

experience, and the VE's testimony, the ALJ determined that there are no jobs that exist in the national economy that Plaintiff can perform. (AR 26). Accordingly, the ALJ found that prior to April 16, 2015, Plaintiff was not disabled, but became disabled on that date and has continued to be disabled through the date of the decision. (AR 26). Thus, based on Plaintiff's DIB application, Plaintiff was not under a disability, as defined by the Act, at any time through March 31, 2014, the date last insured. (AR 27). However, based on Plaintiff's SSI application, Plaintiff has been disabled beginning on April 16, 2015. (AR 27).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial

evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

**A.** **The ALJ's Determination Of The Disability Onset Date Is Contrary To Law And Not Supported By Substantial Evidence**

The ALJ's assessment of Plaintiff's RFC as of April 16, 2015, is largely identical to Plaintiff's RFC prior to April 16, 2015. The only difference is that as of April 16, 2015, Plaintiff is additionally limited to "alternat[ing] between sitting 45 minutes to an hour and laying down and elevating his legs above heart level for two hours throughout the workday." (<u>Compare</u> AR 24, <u>with</u> <u>id.</u> 21-22).  The ALJ reached this conclusion because he found:

> beginning on April 16, 2015, . . . [Plaintiff] stated that he had leg swelling and was using a cane for ambulation.  In July 2015, Dr. Tin diagnosed [Plaintiff] with lymphedema and directed [Plaintiff] to elevate both

8

legs three times a day. [¶] [Plaintiff] testified that
he could no longer walk one mile after July 2015 due to
pain and edema.

(AR 24) (citations omitted).

Plaintiff contends that the ALJ committed legal error by not
calling a medical expert ("ME") at the hearing to determine the
onset date of his disability. (Dkt. No. 17 at 6-11). Plaintiff
argues that "[t]he ALJ's determination of the date [Plaintiff's]
disability began does not have a legitimate medical basis." (Id.
at 11).

While "[t]he ALJ is responsible for studying the record and
resolving any conflicts or ambiguities in it[,] . . . in
circumstances where the ALJ must determine the date of disability
onset and medical evidence from the relevant time period is
unavailable or inadequate, Social Security Ruling ("SSR") 83-20
states that the ALJ should call a medical advisor." Diedrich v.
Berryhill, 874 F.3d 634, 638 (9th Cir. 2017) (citation omitted).
In relevant part, SSR 83-20 states:

With slowly progressive impairments, it is sometimes
impossible to obtain medical evidence establishing the
precise date an impairment became disabling. Determining
the proper onset date is particularly difficult, when,
for example, the alleged onset and the date last worked
are far in the past and adequate medical records are not

available.  In such cases, it will be necessary to infer
the onset date from the medical and other evidence that
describe the history and symptomatology of the disease
process.  . . .  At the hearing, the administrative law
judge (ALJ) should call on the services of a medical
advisor when onset must be inferred.

SSR 83-20, at *2-3.  Relying on SSR 83-20, the Ninth Circuit has
held "that where a record is lacking and ambiguous as to the onset
date of disability, the ALJ must call a medical expert to assist
in determining the onset date." Diedrich, 874 F.3d at 638 (citation
omitted); see DeLorme v. Sullivan, 924 F.2d 841, 848 (9th Cir.
1991) ("In the event that the medical evidence is not definite
concerning the onset date and medical inferences need to be made,
SSR 83-20 requires the administrative law judge to call upon the
services of a medical advisor and to obtain all evidence which is
available to make the determination."); Morgan v. Sullivan, 945
F.2d 1079, 1083 (9th Cir. 1991) (per curiam) (reversing in part an
ALJ's determination of the onset date of mental disorders because
the ALJ did not receive the assistance of an ME).

    Here, the ALJ's reasoning for determining the date of
Plaintiff's disability onset is not supported by substantial
evidence.  The ALJ determined that Plaintiff's leg swelling and
edema began on April 16, 2015.[3]  (AR 24) (citing AR 1686).  However,

---

[3]    Edema is swelling caused by excess fluid trapped in [the]
body's tissues." <https://www.mayoclinic.org/diseases-conditions/
edema/symptoms-causes/syc-20366493> (last visited Oct. 10, 2018).

Plaintiff exhibited edema symptoms long before April 2015. (AR 405, 414 (April 2009: soft tissue swelling in right foot), 1792 (April 2009: severe edema in left ankle), 1989 (May 2012: minimal soft tissue swelling), 515 (July 2012: soft tissue swelling and diffuse nonpitting edema), 571 (January 2013: chronic nonpitting edema on distal bilateral lower extremities), 2137 (July 2013: dependent edema in ankles and feet), 2144 (August 2013: diffuse soft tissue swelling and edema), 1713 (September 2013: edema in bilateral lower extremities), 1711 (December 2013), 628 (April 2014), 650 (June 2014), 657 (August 2014), 661 (October 2014), 668 (January 2015). Similarly, the ALJ found that Plaintiff began using a cane for ambulation in April 2015, but the medical record indicates otherwise. (AR 472 (September 2009: walking with cane), 1981 (January 2010: presenting with an antalgic gait and using a cane to ambulate), 1991 (November 2012: recommending that Plaintiff use cane for stability), 586 (May 2013: Plaintiff has an unstable gait and uses a cane to prevent falls), 2137 (July 2013: using a cane when walking long distances), 596 (December 2013: using cane to ambulate), 619 (February 2014: walking with a cane for support), 1575 (February 2014: using cane to ambulate), 661 (October 2014: ambulating with cane)).

The ALJ also emphasized that in July 2015, Dr. Tin first directed Plaintiff to elevate both legs three times daily to address his lymphedema. (AR 24; see id. 1686). In April 2009, however, Plaintiff's treating provider noted that Plaintiff had not been elevating his feet, despite being advised to do so. (AR 426, 430). Finally, the ALJ noted that beginning in July 2015,

Plaintiff could no longer walk one mile due to pain and edema. (AR 24). Plaintiff did not testify, however, that he had been able to walk one mile until July 2015. Instead, he merely reported that for a month or two he had tried walking a mile but was unable to continue because of severe pain in his ankle and foot. (AR 68; accord id. 1685).

In sum, because "the alleged onset and the date last worked are far in the past and adequate medical records are not available," SSR 83-20, at *2, determining the precise date on which Plaintiff became disabled requires an informed inference, see Diedrich, 874 F.3d at 639. "Such an inference is not possible without the assistance of a medical expert." Morgan, 945 F.2d at 1083. Thus, "the Commissioner erred by not calling a medical advisor at the hearing to help determine the precise onset date of [Plaintiff's] disability under these circumstances -- that is, where there are large gaps in the medical records documenting a slowly progressive impairment and an ALJ's assessment of the disability onset date would be mere speculation without the aid of a medical expert." Diedrich, 874 F.3d at 639. On remand, in order that the ALJ can exercise an informed judgment as to the date of Plaintiff's disability, the ALJ shall employ the services of an ME.

**B.** **The ALJ's Reasons for Discrediting Plaintiff's Subjective Symptom Testimony Were Not Supported By Substantial Evidence**

In January 2014, Plaintiff submitted an exertion questionnaire. (AR 260-62). He stated that he ambulates with a

cane and has difficulty standing for more than five minutes or walking more than 100 yards before pain in his ankle requires him to stop and rest. (AR 260, 262). He can drive only ten to twenty minutes and is unable to climb stairs. (AR 261). In April 2014, Plaintiff reiterated that he is limited in walking and standing. (AR 282).

In June 2014, Plaintiff submitted a second exertion questionnaire. (AR 287-89). He stated that due to ankle pain, he could walk only twenty to fifty yards before needing to rest. (AR 287). He asserted that he could lift his laundry basket and carry it about twenty feet. (AR 288). He is able to drive up to thirty minutes. (AR 288). Plaintiff uses a cane to ambulate. (AR 289).

At the hearing, Plaintiff testified that he is able to drive two to three times a week in order to give people rides. (AR 41). He experiences constant pain in his right ankle and has swelling in both legs, right greater than the left. (AR 54-55). To alleviate the swelling, Plaintiff elevates both legs up to heart level for two hours, twice a day. (AR 55-57). To avoid falling, he ambulates with a cane. (AR 58-59).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 874 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this

analysis, the claimant is <u>not</u> required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." <u>Id.</u> (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." <u>Id.</u> (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. <u>Trevizo</u>, 874 F.3d at 678 (citation omitted); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." <u>Garrison</u>, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

(1) ordinary techniques of credibility evaluation, such
as the claimant's reputation for lying, prior
inconsistent statements concerning the symptoms, and
other testimony by the claimant that appears less than
candid; (2) unexplained or inadequately explained
failure to seek treatment or to follow a prescribed
course of treatment; and (3) the claimant's daily
activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation
omitted). Inconsistencies between a claimant's testimony and
conduct, or internal contradictions in the claimant's testimony,
also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th
Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.
1997). In addition, the ALJ may consider the observations of
treating and examining physicians regarding, among other matters,
the functional restrictions caused by the claimant's symptoms.
Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However,
it is improper for an ALJ to reject subjective testimony based
"solely" on its inconsistencies with the objective medical evidence
presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227
(9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with
findings that are "sufficiently specific to permit the court to
conclude that the ALJ did not arbitrarily discredit claimant's
testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir.
2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487,

493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," and the ALJ did not make a finding of malingering. (AR 22). Nevertheless, the ALJ concluded that Plaintiff's subjective symptom statements "are not fully supported prior to April 16, 2015." (AR 22). First, the ALJ noted that "the objective evidence is . . . inconsistent with [Plaintiff's] allegations that he is unable to perform any work activity." (AR 22). While inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony, it is a factor that the ALJ may consider when evaluating credibility. Bray, 554 F.3d at 1227; Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); Rollins, 261 F.3d at 857; see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). Here, the ALJ found that in February 2014, the consultative examiner "specifically

16

noted that [Plaintiff] had no peripheral edema and no edema in the extremities." (AR 22; see id. 621-22). However, as discussed above, Plaintiff consistently exhibited edema symptoms throughout the period from April 2009 through January 2015. (AR 405, 414, 1792, 1989, 515, 571, 2137, 2144, 1713, 1711, 628, 650, 657, 661, 668). The ALJ also found "no evidence of a doctor opining that [Plaintiff] must elevate his legs during this period [prior to April 2015]." (AR 22). To the contrary, as noted above, in April 2009, Plaintiff's treating provider reported that Plaintiff had not been elevating his feet, despite being advised to do so. (AR 426, 430).

Second, the ALJ concluded that Plaintiff's subjective statements concerning his impairments prior to April 2015 were belied by the conservative treatment he received. (AR 23). A conservative course of treatment may discredit a claimant's allegations of disabling symptoms. See, e.g., Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (treatment with over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain). Here, the ALJ noted that in August 2014, Plaintiff was treated with compression stockings and told to return in six months. (AR 23; see id. 657). The ALJ concluded that "[t]his conservative treatment and the fact that [Plaintiff] was not told to return sooner do not suggest that [Plaintiff] was debilitated at that time." (AR 23). However, the record cited by the ALJ was from Plaintiff's podiatrist who Plaintiff was seeing for treatment of fungal toenails. (AR 657). Indeed, during this period,

17

Plaintiff was seeing his primary care physician every two to three months for treatment of his edema. (AR 660, 662, 667). Further, in June 2009, Plaintiff received open reduction and internal fixation and reconstruction surgery of the right ankle, which caused him to ambulate with a cane throughout the period prior to April 2015. (AR 690, 472, 1981, 1991, 586, 2137, 596, 619, 1575, 661). In May 2012, despite Plaintiff suffering from severe valgus deformity, crepitus with range of motion, and diminished sensation in his toes, Plaintiff's provider determined it would be unsafe for Plaintiff to proceed with a right ankle fusion surgery due to his diabetes and obesity. (AR 1989). In November 2012, Plaintiff's prior surgery was deemed failed and he underwent pantalar arthrodesis. (AR 335, 2102, 2143). Following the surgery, Plaintiff still suffered from persistent ankle pain with prolonged standing or walking and required the continued use of a cane to ambulate. (AR 2143). In September 2013, Plaintiff's treating physician evaluated the possibility of another surgery, but determined that the massive size of Plaintiff's leg as well as his diabetes would make revision surgery "quite difficult and risky." (AR 2143). Surgery is generally not a "conservative" treatment, and it is unclear why Plaintiff's ankle surgeries here should be considered conservative. See Ritchotte v. Astrue, 281 F. App'x 757, 759 (9th Cir. 2008) (rejecting ALJ's conclusion that the claimant's treatment was too conservative where he had surgery and the prognosis was guarded); Mattis v. Berryhill, 2018 WL 2077856, at *13 (C.D. Cal. May 1, 2018) ("Three back surgeries followed by continued pain management through strong opioid medications, is neither routine nor conservative treatment."); Contreras v. Colvin,

18

2015 WL 859626, at *11 (E.D. Cal. Feb. 27, 2015) ("[S]urgery is not considered conservative treatment."). That surgeries are not conservative is especially true where Plaintiff's surgeries were unsuccessful at relieving his pain and edema and where additional surgeries, although recommended, were deemed "quite difficult and risky." See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("In the case of a complaint of pain, such failure may be probative of credibility, because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief. But in the case of impairments where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful, the approach to credibility makes little sense."); Hanes v. Colvin, 651 F. App'x 703, 706 (9th Cir. 2016) ("It's unclear what additional treatment she should have sought out, given that a neurosurgeon told her back surgery would pose a high risk of complications and was unlikely to alleviate her symptoms in any event.").

Finally, the decision below found that "[Plaintiff's] activities of daily living are not corroborative of his alleged degree of impairment and further support the [ALJ's RFC]." (AR 23). Specifically, it was noted that "[Plaintiff] testified that he was able to walk for one mile until July 2015[,] . . . that he gave people rides once in a while[,] . . . [and] could dress without problems." (AR 23). "ALJs must be especially cautious in concluding that daily activities are inconsistent with [subjective symptom testimony], because impairments that would unquestionably preclude work and all the pressures of a workplace environment will

often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Id. "Though inconsistent daily activities may provide a justification for rejecting symptom testimony, the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability." Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017) (citation and alterations omitted); see Orn, 495 F.3d at 639 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability.") (citation and alterations omitted). Indeed, a claimant "does not need to be utterly incapacitated in order to be disabled." Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (citation omitted).

Here, the underlying decision overlooked some important details in Plaintiff's testimony. Plaintiff did not testify that he had been able to walk one mile until July 2015. Instead, he merely reported that for a month or two he had tried walking a mile with a cane but was unable to continue because of severe pain in his ankle and foot. (AR 68; accord id. 1685). "That [Plaintiff] could participate in some daily activities does not contradict the evidence of otherwise severe problems that [he] encountered in [his] daily life during the relevant period." Diedrich, 874 F.3d at 643. The decision did not explain how Plaintiff's daily activities of occasional short drives and dressing himself are

transferable to a work setting. The ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." <u>Orn</u>, 495 F.3d at 639 (citation and alteration omitted). Here, the decision did not contain specific findings nor did it point to any record evidence to support the conclusion that Plaintiff's limited daily activities are "transferable" to a work setting. <u>See</u> <u>id.</u>

The matter is remanded for further proceedings, consistent with this decision.[4]

## VI.

## CONCLUSION

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 15, 2018

                                    /S/
                        _____
                        SUZANNE H. SEGAL

---

[4] Nothing in this Opinion is intended to undermine the ALJ's decision that Plaintiff has been disabled beginning on April 16, 2015.

UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**